UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– against –<br><br>ISHWARDAT RAGHUNATH,<br><br>        Defendant. | **Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)(2)**<br><br>19-CR-121 |

**Parties:**                 **Appearances:**

For United States          Andrew Grubin
                 United States Attorney's Office
                 Eastern District of New York
                 271 Cadman Plaza East
                 Brooklyn, NY 11201
                 718-254-6322

For Defendant           Michael Daniel Weil
                 Federal Defenders of New York, Inc.
                 One Pierrepont Plaza, 16th Floor
                 Brooklyn, NY 11201
                 718-407-7413

JACK B. WEINSTEIN, Senior United States District Judge:

I. Introduction............................................................................................1

II. Instant Offenses......................................................................................1

III. Guilty Plea.............................................................................................2

IV. Sentencing Hearing................................................................................3

V. Offense Level, Criminal History Category, and Guidelines Range............3

VI. Law........................................................................................................4

VII. 18 U.S.C. § 3553(a) Considerations.......................................................4

VIII. Sentence................................................................................................6

IX. Conclusion.............................................................................................7

## I. Introduction

Following his release from federal custody and while on supervised release, Ishwardat Raghunath ("Raghunath" or "the defendant") arranged to sell twenty-five individuals' Social Security numbers, names, birth dates, and addresses. Such offenses are serious because of their harm to individuals' financial security. The defendant ultimately pled guilty to two counts of access device fraud. He is sentenced to 18 months' custody.

## II. Instant Offenses

Between September 2017 and February 2019, the defendant engaged in multiple conversations concerning the sale of stolen personally identifiable information, including Social Security numbers, birth dates, and addresses. He ultimately sold information belonging to 25 people in exchange for about $13,500. Presentence Investigation Report ("PSR") ¶¶ 10–11.

The authorities were alerted to Raghunath's efforts in 2017 by a confidential informant (the "CI"). PSR ¶ 4. The defendant had telephoned the CI and advised that he had the ability to obtain people's personal information from an individual who worked in a doctor's office and was willing to sell it. *Id.* Since the defendant did not want to discuss pricing over the phone, he and

1

the CI met at a restaurant in Jamaica, Queens. PSR ¶¶ 4–5. The meeting was videotaped by investigating authorities. PSR ¶ 5. During the meeting, Raghunath indicated that he had access to thousands of names, addresses, birthdates, and Social Security numbers, and that he could add photographs to the information if needed. *Id.* No deal was completed at that time. PSR ¶¶ 4–6. At two further in-person meetings with the CI, the defendant explained the type of personal information that he was able to obtain and first requested $1,000 per identity, and then $700 per identity. PSR ¶¶ 7–9. No deal was made at either of these two meetings. PSR ¶¶ 8–9.

On February 20, 2018, the defendant met with an undercover agent and sold personal information belonging to five people to the agent in exchange for some $3,500. PSR ¶ 10. After being told by the agent that the identities would be used to launder money, the defendant noted that the fifth individual had the highest credit score. *Id.*

On February 5, 2019, the defendant met with the CI and a second undercover agent and arranged to sell the personal information of 20 people for $10,000. PSR ¶ 11. The defendant was immediately arrested following this exchange. *See* Sent. Hr'g Tr. 13:16–17, June 10, 2019.

### III. Guilty Plea

The defendant pled guilty on March 27, 2019 to Counts One and Two of a two-count indictment. Count One charges that between February 2018 and February 2019, the defendant, together with others, trafficked in one or more unauthorized access device, specifically, Social Security numbers and corresponding names and dates of birth, in a manner affecting interstate commerce, and by such conduct obtained things of value aggregating $1,000 or more during a one-year period, in violation of 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 1029(c)(1)(A)(i). PSR ¶ 1. Count Two charges that on February 5, 2019, the defendant, together with others, possessed fifteen or more devices, specifically, Social Security numbers and corresponding names and

dates of birth, which were counterfeit and unauthorized access devices, in a manner affecting interstate commerce, in violation of 18 U.S.C. § 1029(a)(3) and 18 U.S.C. § 1029(c)(l)(A)(i). *Id.*

## IV. Sentencing Hearing

A sentencing hearing was conducted on June 10, 2019. *See* Sent. Hr'g Tr. The defendant's mother, sister, brother, adult daughter, and friend were present at the hearing. *See id.* 3:6–8. His family expressed support for rehabilitation. *See id.* 29:22–30:4, 31:16–24, 32:2–10. The defendant's friend stated that he believes they can work together again. *See id.* 32:23–25.

The proceedings were recorded on video to develop an accurate record of courtroom atmosphere and body language. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264 (E.D.N.Y. 2004) ("A[n appellate court's] *de novo* review would be factually deficient without a video record of the district court's sentencing hearing.").

## V. Offense Level, Criminal History Category, and Guidelines Range

Count One and Count Two are grouped together to calculate the offense level. U.S.S.G. § 3D1.2(d). The base offense level is six. *Id.* § 2B1.1(a)(2). Two levels are added because the offenses involved a gain of $13,500. *Id.* § 2B1.1(b)(1)(B). Two levels are added because ten or more victims were involved. *Id.* § 2B1.1(b)(2)(A)(i). Two levels are added because the offenses involved the possession or use of unauthorized access devices. *Id.* § 2B1.1(b)(11)(B)(i). The offense level is reduced by two for acceptance of responsibility. *Id.* § 3E1.1(a). The total offense level is 10. PSR ¶ 36.

The defendant has a criminal history dating back to 1987. *See* PSR ¶¶ 38–42. He has a subtotal criminal history score of eight. PSR ¶ 43. Two points are added because he was on supervised release when he committed the instant offense. PSR ¶ 44; U.S.S.G. § 4A1.1(d). His total criminal history score is 10, which establishes a high criminal history category of V. PSR

3

¶ 45. During the hearing, the defendant noted his belief that his criminal history is overstated, since the same criminal scheme resulted in separate federal and state convictions accounted for separately. Sent. Hr'g Tr. 15:10–21. The court concludes that a criminal history category of V is accurate. The guideline imprisonment range is 21 months to 27 months. PSR ¶ 109.

### VI. Law

The United States Sentencing Guidelines (the "Guidelines") are advisory. *United States v. Booker*, 543 U.S. 220, 245 (2005). The district court "must . . . conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). If the support for doing so is compelling, the district court may impose a sentence outside the Guidelines range. *Id.* The sentencing court shall "state in open court the reasons for its imposition of the particular sentence" and, if it has departed from the Guidelines range, why. *See* 18 U.S.C. § 3553(c).

The district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested." *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The court should consider, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

### VII. 18 U.S.C. § 3553(a) Considerations

Raghunath was born in Guyana in 1964; he is 54 years old. PSR ¶ 50. The defendant advised that he had an "okay" childhood and described his family as close and loving. PSR ¶¶ 54–55. He lived with his parents in Guyana until about 1970 when they immigrated to the United States, leaving him and his siblings in the care of a maternal aunt. PSR ¶ 54. The defendant's parents provided financial support, but he missed them. *Id.* The defendant joined his parents in the United States in 1976. PSR ¶¶ 54–55. When an adult, he provided financial

4

support to his mother, who suffers from depression, memory loss, heart problems, high blood pressure, and a liver condition, and his sister, when she battled cancer. PSR ¶ 50.

Raghunath has five children. He raised his oldest daughter from birth, after his former partner was no longer able to care for her. PSR ¶ 56. The daughter is now 24 and studying to become a nurse practitioner. PSR ¶ 57. She cited her father as a good "motivating" presence in her life. Sent. Hr'g Tr. 29:22–24. The defendant has four other children with his wife, from whom he is now separated. PSR ¶¶ 58–59. After allegations of abuse and neglect were made against him, the children were placed in foster care. PSR ¶ 59. They were subsequently returned to their mother's custody. *Id.* Issues concerning visitation between the children and the defendant are being resolved through the Family Court. *Id.*

The defendant has a sporadic work history. When he was about 25, he withdrew from City College of New York two credits shy of completing his degree to find employment after his own father could no longer work. PSR ¶ 86. He was employed as a taxi and limousine driver. PSR ¶¶ 96–97. He has worked in construction and at odd jobs on a sporadic basis. PSR ¶¶ 90–95. He has expressed his desire to return to college and complete his degree. *See* Sent. Hr'g Tr. 14:12–14.

In 2011, the defendant was sentenced to 40 months custody for his part in a residential mortgage fraud scheme. PSR ¶ 40. He was later sentenced to an incarceratory term of 12 months for violating the terms of his supervised release after he was convicted of grand larceny and mail fraud. *Id.*

The defendant has a number of physical and mental medical problems. He has been diagnosed with kidney failure and with sarcoidosis, a rare condition in which groups of immune cells form lumps in various organs of the body. PSR ¶¶ 70–71. Raghunath reports having been

5

hospitalized for chest pains and "mini-strokes." PSR ¶¶ 67–68. He was a regular cocaine user from 1984 to 2009. PSR ¶ 84.

The defendant has also been diagnosed with intermittent explosive disorder and personality disorder with narcissistic and antisocial traits. PSR ¶ 79. He received treatment from 2014 to 2016, but was discharged from the program due to an arrest and incarceration. *Id.* The discharge summary by the treatment provider suggests that there was difficulty engaging the defendant in treatment. *Id.*

During the sentencing hearing, it became clear that Raghunath has a supportive family. His siblings and his daughter will assist him in his rehabilitation so that he can provide financial and emotional support to his family members.

**VIII.   Sentence**

Raghunath actively engaged in the present serious financial crimes soon after his release from federal custody and while he was under supervision. He repeatedly contacted an individual about the possibility of selling stolen personal information and he set up multiple meetings to meet this goal. These offenses have consequences for real individuals. Identity theft has devastating impact on individuals' financial security. "In addition to significant financial loss, victims must cope with wrongful arrests, loss of utility service, erroneous information on health records, improper child support garnishments, and harassment by collection agencies." Sarah Dranoff, *Identity Theft: A Low-Income Issue*, 17 Am. Bar Assoc. Dialogue Mag. (Winter 2014), https://perma.cc/ES6W-QFZ8. The impact of identity theft can be particularly acute for low-income individuals. *Id.* ("[F]or low-income individuals and families, the financial injury, emotional stress, and other effects experienced by identity theft victims across the income spectrum are often compounded by severe and immediate consequences to crucial needs–based benefits, subsidized housing, employment, utility service, and medical care."). In 2016, about

33% of individuals who had experienced identity theft in the previous year had a household income below $50,000. *See* Erika Harrell, U.S. Dep't. of Just., Bureau of Just. Stat., *Victims of Identity Theft, 2016* at 4 tbl.2 (Jan. 2019). A custodial sentence of 18 months will adequately advance the goals of general and specific deterrence with respect to these crimes.

The defendant is sentenced to eighteen months' incarceration and to three years of supervised release. Placement in a penitentiary in New York City, where his family members can visit, is recommended. A forfeiture order has been separately entered. *See* Order Forfeiture, June 10, 2019, ECF No. 19. The government may, by September 8, 2019, submit a proposed restitution order. No fines are imposed because the defendant has insufficient funds to pay one. There is a special assessment of $100 for each of the two counts.

## IX. Conclusion

All relevant issues have been considered to ensure a "sufficient, but not greater than necessary" sentence.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: July 3, 2019
Brooklyn, New York